Rel: August 2, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2024

_____

## CL-2024-0382

_____

## Ex parte H.W. and K.W.

## PETITION FOR WRIT OF MANDAMUS

## (In re: In the matter of N.R.S.W.)

## (Lee Juvenile Court JU-17-515.07)

FRIDY, Judge.

H.W. ("the father") and K.W. ("the mother") (collectively "the parents") filed a petition for a writ of mandamus asking this court to direct the Lee Juvenile Court ("the juvenile court") to set aside its May 9, 2024, order finding that they had impliedly consented to the adoption of their child N.R.S.W. ("the child"). They also ask that we direct the juvenile court to dismiss the petition that Br.P. and T.P. ("the prospective

adoptive parents") filed seeking to adopt the child. For the reasons discussed herein, we deny the petition.

Background

The materials submitted in support of and in opposition to the parents' mandamus petition indicate that, in late 2017, when the child was three years old, the father left the child and a sibling of the child with his mother ("the paternal grandmother"). The mother, who at that time was involved in dependency actions in Birmingham concerning some of her other children, knew that the child and the sibling were with the paternal grandmother. In December 2017, the paternal grandmother filed a dependency petition in the juvenile court.

According to the materials before us, the evidence presented at the trial in the dependency matter indicated that the child and the sibling had been exposed to domestic violence and substance abuse in the parents' home, that the parents "were both being erratic and not focused on the children and their needs, and that the parents had failed to provide for their basic food, shelter, and healthcare." Based on the evidence, the juvenile court found the child and the sibling dependent and awarded the paternal grandmother custody of the child and the

sibling who had been left in her care. The juvenile court awarded the mother supervised visitation and directed the father to file a petition to obtain visitation. The juvenile court also created a list of goals for the parents to meet to be reunified with the child and the sibling.

According to the juvenile court's order regarding the parents' consent to the adoption, the parents failed to work toward meeting their assigned goals. The paternal grandmother was having a difficult time finding a preschool in her area that could meet the child's specialized preschool needs. The paternal grandmother knew the prospective adoptive parents and they agreed that the child should live with the prospective adoptive parents, one of whom was an educator in LaGrange, Georgia, so that the child would have access to greater educational resources. The child began living with the prospective adoptive parents on June 1, 2018. The juvenile court was not told of the move.

As time went on, the mother failed to comply with many of the requirements that the juvenile court had set forth in the dependency order, and her visits with the child were few and far between. The father failed to maintain a relationship with the child. In May 2021, the prospective adoptive parents filed a petition in the Lee Probate Court

("the probate court") seeking to adopt the child. In the adoption petition, the prospective adoptive parents alleged that, among other things, the parents had abandoned the child and that they had impliedly consented to the adoption because, the prospective adoptive parents said, the parents had failed to maintain a significant parental relationship with the child for a period of six months.

On June 30, 2021, the mother filed a motion to dismiss the adoption petition and an objection to the adoption. The father filed a motion to dismiss and an objection to the adoption on July 20, 2021. The materials before us indicate that, on July 30, 2021, the probate court entered an order continuing a hearing it had scheduled for an unidentified purpose "so as not to conflict with any ongoing Juvenile Court proceedings."

On June 16, 2022, nearly a year after the parents filed their motions and objections to the adoption petition, the prospective adoptive parents filed a motion to transfer the adoption proceeding to the Lee District Court ("the district court"). As authority for their request, the prospective adoptive parents cited § 12-12-35, Ala. Code 1975, which provided that "[a]doption proceedings, primarily cognizable before the probate court, may be transferred to the district court on motion of a party to the

proceeding in probate court."[1] In their motion to transfer, the prospective adoptive parents stated that, because of the delay in the probate court proceeding, the child had not been granted permanency and they had not been permitted to advocate for the child's best interest. On June 24, 2022, the probate court, which also cited § 12-12-35, entered an order transferring the adoption proceeding to the district court "to determine whether the adoption should be permitted to proceed in the face of pending matters in the juvenile court regarding the subject child." The case appears subsequently to have been transferred to the juvenile court.[2]

---

[1]This statute was repealed effective January 1, 2024. See Ala. Acts 2023, Act No. 2023-92.

[2]We recognize that § 12-12-35 provides for the transfer of an adoption proceeding from a probate court to a district court, rather than to a juvenile court. Based on the materials before us, we do not have sufficient information to determine whether the adoption petition was properly transferred from the district court to the juvenile court. See Ex parte Fontaine Trailer Co., 854 So. 2d 71, 74 (Ala. 2003) (A petitioner for a writ of mandamus is obliged to provide "'copies of any order or opinion or parts of the record that would be essential to an understanding of the matters set forth in the petition.'" (quoting Rule 21(a), Ala. R. App. P.)), Furthermore, in their petition, the parents do not contend that the adoption action should not have been transferred to the juvenile court.

On July 12, 2022, the mother filed a motion to dismiss in the juvenile court, asserting that the probate court had improperly transferred the adoption action to the juvenile court. The juvenile court denied the mother's motion on October 17, 2022. On April 27, 2023, the juvenile court entered another order in which it stated that the mother had withdrawn her objection to the transfer of the adoption action from the probate court to the juvenile court and her related motion to dismiss. However, the juvenile court said, the mother had filed a previous motion to dismiss (apparently the motion filed June 30, 2021) that it would consider. The materials before us do not contain an order regarding the mother's first motion to dismiss.

On June 12, 2023, the father filed in the probate court an amended motion to dismiss the adoption petition, asserting that the probate court retained jurisdiction of the adoption proceeding to determine whether "the necessary consents have been obtained," whether the prospective adoptive parents were entitled to adopt the child, and whether adoption was in the best interest of the child. He then set forth several grounds as to why the adoption petition was due to be dismissed, concluding that "[e]verything about this adoption proceeding is fraudulent and illegal"

and pointing out that the prospective adoptive parents did not have legal custody of the child. The materials before us do not contain an order regarding the father's motions to dismiss.

After an evidentiary hearing held over two days in July and December 2023, the juvenile court entered an order on May 9, 2024, determining that there had been at least one six-month period where the parents had voluntarily failed to maintain a significant parental relationship with the child, that they had impliedly consented to the child's adoption, and that that consent was valid and could not be withdrawn. The order stated that further hearings regarding adoption would be set by separate order. A transcript of the evidentiary hearing is not included in the materials before us.

On May 23, 2024, the parents filed their petition for a writ of mandamus to this court.

Analysis

A writ of mandamus can be issued only when the petitioner has shown there is "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4)

7

properly invoked jurisdiction of the court." Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995). "The burden of establishing a clear legal right to the relief sought rests with the petitioner." Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So. 2d 967, 972 (Ala. 2007). In reviewing a mandamus petition, this Court considers "only those facts before the trial court." Ex parte Baker, 459 So. 2d 873, 876 (Ala. 1984).

We note that this case is governed by the Alabama Adoption Code, § 26-10A-1 et seq., Ala. Code 1975. Although the Alabama legislature repealed the Alabama Adoption Code and replaced it with the Alabama Minor Adoption Code, § 26-10E-1 et seq., Ala. Code 1975, see Ala. Acts 2023, Act No. 2023-92, the repeal was not effective until January 1, 2024, when the Alabama Minor Adoption Code became effective, and the new adoption code applies only to adoption proceedings commenced on or after that date, see C.S. v. Morgan Cnty. Dep't of Hum. Res., [Ms. CL-2022-1246, Jan. 31, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024).

The mother and the father first appear to challenge the jurisdiction of both the probate court and the juvenile court. They contend that the probate court erred in failing to grant their motions to dismiss, which were based, at least in part, on their argument that the prospective

8

adoptive parents do not have legal custody of the child and their argument that the prospective adoptive parents and the child, who has lived with the prospective adoptive parents in Georgia since June 2018, did not meet the residency requirements to file the adoption petition in an Alabama court.

We first note that the materials before us do not indicate that either the probate court or the juvenile court has entered an order regarding the mother's first motion to dismiss or the two motions to dismiss that the father filed. Those motions appear to have remained pending when the mother and the father filed their petition for a writ of mandamus. In their petition, they fail to discuss why they believe this issue is properly before us or, if it is properly before us, whether it is timely. Nonetheless, insofar as the parents appear to challenge the jurisdiction of the probate court and/or the juvenile court -- an issue that can be raised at any time and is reviewable by mandamus petition -- we will address the question. See K.L. v. M.W., [Ms. CL-2023-0274, Jan. 5, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024); Ex parte Liberty Nat'l Life Ins. Co., 888 So. 2d 478, 480 (Ala. 2003).

To the extent that the mother and the father argue that because the prospective adoptive parents are Georgia residents, the probate court, and, subsequently, the juvenile court, do not have jurisdiction over this matter, this case is unusual in that it is the parents, who are Alabama residents, challenging the jurisdiction of an Alabama court to consider whether a Georgia couple can adopt their child. Indeed, the cases involving interstate disputes between biological parents and prospective adoptive parents typically involve the biological parents' efforts to have adoption proceedings moved to their location rather than challenging their own state's jurisdiction, as the parents do here. See, e.g., B.V. v. J.M., 306 So. 3d 38 (Ala. Civ. App. 2020).

Regardless, in arguing in this case that the prospective adoptive parents should not have been permitted to file an adoption petition in Alabama because they failed to meet residency requirements, the parents do not specify the residency requirements they contend are applicable, nor do they cite any authority or make a legal argument supporting a contention that failure to meet any residency requirements would preclude the prospective adoptive parents from filing the adoption petition in Alabama. Our research revealed no authority, and the parents

10

do not cite any authority, for the proposition that neither the probate court nor the juvenile court could properly exercise jurisdiction over the adoption proceeding in this case based on the parents' contention that the prospective adoptive parents and the child were not Alabama residents. Thus, the parents have failed to demonstrate that they have a clear legal right to a writ of mandamus directing the juvenile court to dismiss the adoption petition on this basis.

The mother and the father next contend that the adoption petition is due to be dismissed because, they say, the prospective adoptive parents do not have legal custody of the child; the licensed child-placing agency that conducted an investigation of the prospective adoptive parents was in Georgia; the dispositional hearing was not held within ninety days of the completion of the preplacement investigation; there is no indication that either the probate court or the juvenile court approved the preplacement investigation; and the probate court held the case for more than a year before transferring it to the juvenile court, which then postponed the contest hearing for more than a year. None of these contentions trigger jurisdictional concerns.

11

Although we question whether these contentions are premature because the documents submitted to us do not include an order of the probate court or the juvenile court regarding the pending motions to dismiss, even assuming the motions were implicitly denied when the juvenile took up the question whether the mother and the father had consented to the adoption, the mother and the father are not entitled to the relief they seek.

A writ of mandamus "will not issue when there is an adequate remedy by appeal," nor can the writ "be used as a substitute for appellate review." Ex parte Fowler, 574 So. 2d 745, 747 (Ala. 1990). Furthermore, "aside from certain limited exceptions, the denial of a motion to dismiss is not reviewable through a petition for a writ of mandamus because an adequate remedy is available by way of an appeal." Ex parte Kohlberg Kravis Roberts & Co., L.P., 78 So. 3d 959, 978 (Ala. 2011); Ex parte Liberty Nat'l Life Ins. Co., 825 So. 2d 758, 761-62 (Ala. 2002). The mother and the father have not explained why they cannot raise by appeal what they say is the denial of their motions to dismiss. Therefore, they have failed to demonstrate that they have a clear legal right to relief by a writ

of mandamus as to this issue. See Ex parte C.D., 376 So. 3d 545 (Ala. Civ. App. 2022).

The mother and the father next contend that the probate court's order transferring the adoption matter was unclear as to whether the probate court intended to transfer to the juvenile court only the question of whether to terminate the parents' parental rights or, instead, intended to transfer to the juvenile court the entire adoption proceeding. They also assert that the probate court failed to state which of the mechanisms available for transferring an adoption case to a juvenile court it was employing.

In its order transferring the adoption, the probate court stated that the prospective adoptive parents had consistently urged it to proceed with the adoption but that it had been reluctant to do so because of the ongoing dependency proceedings in the juvenile court. The probate court cited § 12-12-35, which provides that "[a]doption proceedings, primarily cognizable before the probate court, may be transferred to the district court on motion of a party." It then "transferred [the adoption case] to the Lee County District Court to determine whether an adoption should be permitted to proceed in the face of pending matters in the juvenile court."

13

It is true, as the parents point out, that the "primary jurisdiction over adoption proceedings is in the probate court." B.W.C. v. A.N.M., 590 So. 2d 282, 283 (Ala. Civ. App. 1991) (overruled on other grounds by O.S. v. E.S., 205 So. 3d 1219 (Ala. Civ. App. 2013), rev'd, Ex parte O.S., 205 So. 3d 1233 (Ala. 2014)). In Ex parte C.L.C., 897 So. 2d 234, 237 (Ala. 2004), our supreme court quoted B.W.C., 590 So. 2d at 283, to hold that "'[u]nless [a] juvenile court acquire[s] jurisdiction over a petition to adopt by the "transfer" mechanism found in § 12-12-35, [Ala.] Code 1975, the juvenile court [is] without authority to grant an adoption.'" In Ex parte A.M.P., 997 So. 2d 1008, 1017 (Ala. 2008), our supreme court held that § 12-12-35 allowed a party to an adoption proceeding to initiate a transfer from the probate court to the juvenile court and that "once a motion for transfer is granted [pursuant to § 12-12-35], the entire 'adoption proceeding[]' is transferred to the district court."

The prospective adoptive parents relied on § 12-12-35 in requesting a transfer of the adoption proceeding from the probate court to the district court. Based on the holdings in B.W.C., Ex parte C.L.C., and Ex parte A.M.P., we conclude that the probate court's reference to § 12-12-

14

35 in its transfer order constituted a transfer of the entire adoption proceeding to the district court, and, subsequently, to the juvenile court.

Finally, the parents ask this court to direct the juvenile court to vacate its May 9, 2024, order finding that they had consented to the child's adoption. The order does not contain a custody determination, and no interlocutory order of adoption has been entered, so the adoption proceeding remains pending in the juvenile court. In asking us to order the juvenile court to vacate the May 9 order, the parents argue that the juvenile court's finding that they had abandoned the child for an unspecified six-month period ignores the evidence that, in the underlying dependency action, the juvenile court had suspended the father's right to visitation and the evidence that the paternal grandmother had "secreted" the location of the child when she placed the child with the prospective adoptive parents. The parents argue that there can be no voluntary abandonment under these conditions and, therefore, the order finding implied consent is due to be set aside.

It is undisputed that, under the former adoption code, which was in effect at the time the prospective adoptive parents filed their adoption petition, the order determining implied consent is an interlocutory order,

15

in that it did not resolve the adoption proceedings. See Ex parte W.L.K., 175 So. 3d 652, 656 (Ala. Civ. App. 2015) (explaining that an order resolving an adoption contest but not resolving the entire adoption proceeding was an interlocutory order).[3] However, it is well settled that "[a] writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal." Ex parte Empire Fire & Marine Ins. Co., 720 So. 2d 893, 894 (Ala. 1998).

This court has consistently reviewed orders that determined that a parent had impliedly consented to adoption as part of our review of an appeal of a final judgment of adoption. See, e.g., S.P. v. J.R., 206 So. 3d 637 (Ala. Civ. App. 2016); J.D.S. v. J.W.L., 204 So. 3d 386 (Ala. Civ. App. 2016); and I.B. v. T.N., 194 So. 3d 221 (Ala. Civ. App. 2015). Because the parents may challenge the May 9, 2024, order finding implied consent by appeal from a final judgment of adoption, they have an adequate remedy

---

[3]To the extent the May 9, 2024, order can be construed as resolving a contest to the adoption, it would have been a final judgment for purposes of appeal under § 26-10E-25(a)(1)(b), Ala. Code 1975, part of the Alabama Minor Adoption Code, supra. But, as previously noted, the Alabama Minor Adoption Code does not apply to this case.

16

other than by a writ of mandamus. Therefore, their petition is due to be denied on this ground.

## Conclusion

For the reasons set forth above, the parents have failed to demonstrate that they have a clear legal right to the relief they requested in their petition for a writ of mandamus. Therefore, the petition is denied.

PETITION DENIED.

Edwards, Hanson, and Lewis, JJ., concur.

Moore, P.J., concurs in the result, without opinion.